UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
LIBERTY SQUARE REALTY CORP., :
:
               **Plaintiff,** :
:     12 CV 1395 (HB)
 - against - :
:     <u>OPINION & ORDER</u>
BORICUA VILLAGE HOUSING :
DEVELOPMENT FUND COMPANY, INC., :
ADOLFO CARRION JUNIOR, HUGO :
SUBOTOVSKY, AUFGANG + :
SUBOTOVSKY, LLC, THE DOE FUND, INC., :
THE CITY OF NEW YORK, NYC :
DEPARTMENT OF HOUSING :
PRESERVATION AND DEVELOPMENT :
AND TED WEINSTEIN :
:
               **Defendants.** :
------------------------------------------------------------------x

**Hon. HAROLD BAER, JR., District Judge:**

      Before the Court are three motions to dismiss brought by (1) defendants Boricua Village Housing Development Fund Company, Inc. and the Doe Fund, Inc., (2) defendants Hugo Subotovsky and Aufgang + Subotovsky, LLC, and (3) defendants the City of New York (the "City"), the New York City Department of Housing Preservation Development ("HPD"), and Ted Weinstein, the Director of Bronx Planning with HPD (collectively, "Defendants"). Plaintiff Liberty Square Realty Corp. ("Liberty") asserts claims for violation of the National Historic Preservation Act ("NHPA"), property damage, violation of Liberty's due process rights and eminent domain rights, violation of Liberty's right to a fair trial, and conspiracy to violate Liberty's property rights. For the reasons set forth below, the motions to dismiss are GRANTED.

**I. Background**

      On December 22, 1998, Liberty purchased the old Bronx Borough Courthouse (the "Courthouse"), a designated landmark. Compl. ¶ 13. Liberty asserts that the sale of the Courthouse included the sale of an easement on East 161st Street that provided the sole access to the loading dock. *Id.* at ¶ 2. In February 2008, Defendants began construction on Boricua

1

Village, a development project abutting the Courthouse, *id.* at ¶ 16, which blocks "access to the rear entrance and loading dock of [Liberty's] property." *Id.* at ¶ 26. Liberty alleges that Defendants failed to protect Liberty's landmark, failed to comply with certain Department of Buildings requirements, and "circumvented the legal protections in place to preserve [Liberty's] landmarked property by failing to obtain clearance from the landmarks commission in charge of said property." *Id.* at ¶ 19.

Liberty filed a complaint in the Supreme Court of Bronx County in March 2011. Kendric Decl. Ex. B Compl. Shortly thereafter, Liberty filed a motion for an Order to Show Cause ("OTSC") and Temporary Restraining Order ("TRO") that sought to enjoin Defendants from violating Liberty's access to 161st Street, Kendric Decl. Ex. C OTSC and TRO March 2011, which was denied in April 2011. Kendric Decl. Ex. D Order of the Honorable Brigannti-Hughes, J.S.C. April 2011. In July 2011, Liberty filed a motion for an OTSC and TRO in the Appellate Division. Kendric Decl. Ex. E OTSC and TRO July 2011. This motion was also denied. Kendric Decl. Ex. G Order of the Appellate Division of the Supreme Court, First Judicial Dept. Sept. 2011. An appeal is currently pending before the New York State Court of Appeals. Kendric Decl. Ex. H Notice of Appeal. According to Defendants, that appeal is unperfected. Boricua MTD 7.

## II. Discussion

### A. Legal Standard

According to the Supreme Court's most recent pronouncements, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The requirement that the court accept all factual allegations as true does not apply to "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* (citing *Twombly*, 550 U.S. at 555). The court's determination of whether a complaint states a "plausible claim for relief" is a "context-specific task" that requires application of "judicial experience and common sense." *Id.* at 679.

Federal courts may take judicial notice of state court filings, regulatory filings and other publicly available documents on a motion to dismiss. *See Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 424-25 (2d Cir. 2008).

### B. Only Federal Agencies can Violate the NHPA

Liberty's first cause of action is for violation of the NHPA, alleging that "Defendants breached their obligation to protect [Liberty's] National Historic site, in violation of Section 106 of the National History Preservation Act, 16 U.S.C. § 470. [sic] as well as other statutes and laws." Compl. ¶ 28. Unfortunately for Plaintiff, "[T]he law makes it clear that violations of the NHPA can only be committed by a federal agency." *W. Mohegan Tribe & Nation of New York v. New York*, 246 F.3d 230, 232 (2d Cir. 2001); *see also Vieux Carre Prop. Owners v. Brown*, 875 F.2d 453, 458 (5th Cir. 1989) ("By its terms, only a federal agency can violate section 470f.").[1] Although Liberty asserts that a suit against an entity that is not a federal agency is permitted under the NHPA, Liberty cites to no authority to support its argument. To make the cheese more binding, each case Liberty cites includes at least one federal agency as a defendant. *See Bus. & Residents Alliance of E. Harlem v. Jackson*, 430 F.3d 584 (2d Cir. 2005) (Department of Housing and Urban Development); *Tyler v. Cisneros*, 136 F.3d 603 (9th Cir. 1998) (same); *Bywater Neighborhood Ass'n v. Tricarico*, 879 F.2d 165 (5th Cir. 1989) (Federal Communications Commission); *Vieux Carre*, 875 F.2d at 453 (Army Corps of Engineers); *Brewery Dist. Soc'y v. Fed. Highway Admin.*, 996 F. Supp. 750 (S.D. Ohio 1998) (several federal agencies).[2] Because there is no federal agency listed as a defendant in this case, Liberty's first cause of action must fail.

### C. The *Rooker-Feldman* Doctrine Bars Claims 3-5

The third cause of action alleges violations of Liberty's constitutional due process rights and eminent domain rights by the City because, among other things, it "allowed Defendants" to

---

[1] Liberty's argument that "Defendants received federal funding for their development project . . . [and] thus, are actors with respect to applicable Federal declarations and statutes," Compl. ¶ 27, fails. *See Bus. & Residents Alliance of E. Harlem v. Jackson*, 430 F.3d 584, 586 (2d Cir. 2005) (rejecting plaintiff's argument that federal funding was sufficient to state an NHPA claim).

[2] Although I need not reach the additional argument for dismissal of this claim—that there is also no private right of action under the NHPA—I note that this likely provides an alternative basis for dismissal. *See Friends of Hamilton Grange v. Salazar*, No. 08 Civ. 5220, 2009 WL 650262, at *21 (S.D.N.Y. Mar. 12, 2009) ("Having found that the text of Sections 106 and 110, wholly directed at agencies, does not provide a private right of action, plaintiffs' claims arising directly under the NHPA are therefore dismissed.").

build a structure and granted easements over Liberty's property without informing Liberty or getting its permission or compensating Liberty for the unconstitutional taking of its property. Compl. ¶¶ 27-34.  The fourth cause of action, for "Violation of Plaintiff's Right to a Fair Trial," states that Defendants "have rendered it impossible for [Liberty] to obtain a fair trial in the Supreme Court Bronx County as well as the Appellate Division." This, the Plaintiff claims, is due to the "extensive involvement with all the politicians and the Borough Presidents office as well as the building department of the City of New York," and the Plaintiff has found it impossible to locate "Judges in the State system who are not affiliated in one way or another." *Id.* at ¶¶ 35-38.  I am familiar with no such cause of action. *See infra* n.4. The fifth cause of action alleges a "conspiracy to violate [Liberty's] property rights" by Defendants. *Id.* at ¶¶ 39-42.

Each of these claims is premised on the underlying argument that Liberty's purchase of the Courthouse included an easement, an argument that was tested by OTSC seeking injunctive relief and rejected by the Bronx County Supreme Court and the Appellate Division. *See* Kendric Decl. Ex. D Order of the Honorable Brigannti-Hughes, J.S.C. April 2011; Kendric Decl. Ex. G. Order of the Appellate Division of the Supreme Court, First Judicial Dept. Sept. 2011.  All of which it appears these courts were ready, willing and able to, and did in fact, resolve.  Liberty filed a Notice of Appeal and it is pending before the New York State Court of Appeals. Kendric Decl. Ex. H Notice of Appeal.

The *Rooker-Feldman* doctrine establishes the principle that federal district courts lack subject matter jurisdiction over suits that seek to review final state court determinations or to resolve issues that are "inextricably intertwined" with earlier state court determinations. *See Dist. of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983); *Hoblock v. Albany County Bd. of Elections*, 422 F.3d 77, 84 (2d Cir. 2005). "That [Plaintiffs] are still in the process of appealing the state court decision is irrelevant to the *Rooker-Feldman* analysis." *Schuh v. Druckman & Sinel, L.L.P.*, 07 Civ. 366, 2008 WL 542504, at *5 (S.D.N.Y. Feb. 29, 2008).[3]  The

---

[3] There is a split of authority as to whether *Rooker-Feldman* applies to cases where there is a pending state court appeal. *See Ward v. Bankers Trust Co. of California, N.A.*, 09 Civ. 1943, 2011 WL 1322205, at *5 (E.D.N.Y. Mar. 29, 2011) (citing *Caldwell v. Gutman, Mintz, Baker & Sonnenfeldt, P.C.*, 701 F. Supp. 2d 340, 346–47 (E.D.N.Y. 2010) (collecting cases)), Although the Second Circuit has not directly addressed whether *Rooker-Feldman* applies in this situation, a summary order in *Swiatkowski v. New York* suggests that the doctrine bars suits brought while a state court appeal is pending. 160 Fed. Appx. 30 (2d Cir. 2005) (upholding district court's determination that *Rooker-Feldman* barred the suit when appeal "remained pending" when the plaintiffs removed the suit from state court).  The purpose of the doctrine "would be undermined if the doctrine is inapplicable simply because a litigant happens to be seeking state appellate review of a state-court judgment, while also seeking federal district court

doctrine, which wrests jurisdiction from this Court, is most frequently applied in cases such as this, *i.e.*, "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).  Four requirements must be met for the *Rooker-Feldman* doctrine to apply: (1) the federal plaintiff must have lost in the state court; (2) the federal plaintiff must complain of injuries caused by a state-court judgment; (3) the federal plaintiff must invite the district court's review and rejection of that state-court judgment; and (4) the state-court judgment must have been rendered before the federal action commenced. *Green v. Mattingly*, 585 F.3d 97, 101 (2d Cir. 2009).  Here, the first prong is satisfied because Liberty clearly lost in state court when both the Bronx County Supreme Court and the Appellate Division of the Supreme Court rejected Liberty's requests for a TRO and ultimately a permanent injunction on the basis of Liberty's alleged easement.  Liberty invites me to review and reject the state court judgment that Liberty had no easement, and this would satisfy the third prong.  Finally, the state court decisions were rendered before this action was commenced.

The problem for the Plaintiff here is that "[j]ust presenting in federal court a legal theory not raised in state court . . . cannot insulate a federal plaintiff's suit from *Rooker-Feldman* if the federal suit nonetheless complains of injury from a state-court judgment and seeks to have that state-court judgment reversed." *Hoblock v. Albany County Bd. of Elections*, 422 F.3d 77, 86 (2d Cir. 2005).  Put another way, the test is whether Liberty's constitutional claims are "independent of the state court judgment, or does the . . . federal suit assert injury based on a state judgment and seek review and reversal of the judgment." *Id.* at 87.  The assertion of bias on the part of the state court judges below, if true, may be a disaster for litigants but fails to overcome Liberty's central problem, that it is essentially asking me to review and reject a state-court judgment against Liberty. *Green*, 585 F.3d at 101; *see also Johnson v. De Grandy*, 512 U.S. 997, 1005-06 (1994) (explaining that the *Rooker-Feldman* doctrine bars a losing party in state court litigation "from seeking what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights"); *Bobrowsky v. Yonkers Courthouse*, 777 F. Supp. 2d 692, 706 (S.D.N.Y.

---

review of that judgment. Regardless of the status of any state court appeals, the litigant is still seeking federal review of a state-court judgment. This is what *Rooker–Feldman* prohibits." *Caldwell*, 701 F. Supp. 2d at 347–48.

2011) ("[T]he simple assertion of a constitutional claim does not create an independent injury if the plaintiff's injury is caused by the state court judgment."). The Court in *Glatzer v. Barone*, 614 F. Supp. 2d 450, 465 (S.D.N.Y. 2009) *aff'd*, 394 F. App'x 763 (2d Cir. 2010), concluded that the *Rooker-Feldman* doctrine was satisfied where the plaintiff "claim[ed] violations of his constitutional rights by reason of judicial errors and ethical conflicts, under both state and federal law, manifested by the judges' failure to fully hear and adjudicate the claims." The court concluded that it was without jurisdiction because the remedy sought by the plaintiff "would fundamentally require the Court to review and reject the state judgment in question." *Id*. Likewise, I conclude that I am without jurisdiction to review the state court determinations and thus the third, fourth and fifth causes of action must fail on that basis alone.[4]

### D. I Decline to Exercise Supplemental Jurisdiction over the State Law Claim

The second cause of action alleges that Defendants violated Liberty's property rights. I decline to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c) over this claim. *See In re Merrill Lynch Ltd. P'ships Litig.*, 154 F.3d 56, 61 (2d Cir. 1998) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine – judicial economy, convenience, fairness and comity – will point toward declining jurisdiction over the remaining state-law claims.") (*quoting Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)). The second cause of action is best left to a state court to decide.

### III. Conclusion

I have considered the parties' remaining arguments and find that they are without merit. For the foregoing reasons, the motions to dismiss are GRANTED. The Clerk of the Court is directed to close the open motions and remove them from my docket.

SO ORDERED
August \_\_, 2012
New York, New York

Hon. Harold Baer, Jr.
U.S.D.J.

---

[4] There are likely other bases for dismissal as well; however, having concluded that I am without jurisdiction pursuant to the teachings of *Rooker-Feldman*, I need not reach the additional arguments for dismissal or abstention. *Gunn v. Ambac Assur. Corp.*, 11 Civ. 5497, 2012 WL 2401649, at *13 (S.D.N.Y. June 26, 2012) ("The Court need not reach those additional defenses to the action, having determined that *Rooker-Feldman* has divested it of jurisdiction.").